**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**MOHAMED LAMIN FORNAH** )
)
Plaintiff, )
)
v. ) Civil Action No. CBD 08-1951
)
**UNIVERSITY OF MARYLAND** )
)
Defendant. )

**MEMORANDUM OPINION**

Before this Court is Defendant's Motion for Summary Judgment ("Defendant's Motion") (Docket Item No. 16). The Court has reviewed Defendant's Motion and the Opposition and Reply thereto. No hearing is deemed necessary. Local Rule 105.6 (D. Md.). For the following reasons, the Court hereby GRANTS IN PART and DENIES IN PART Defendant's Motion.

## I. Background

### A. Plaintiff's Employment History

On February 27, 2004, Defendant University of Maryland hired Plaintiff Mohamed L. Fornah as an Account Clerk II in the Accounts Payable Unit of the Finance Office. This was a contractual position with an initial term from March 7, 2004 to June 30, 2004. Defendant renewed Plaintiff's employment contract twice– first on June 18, 2004 and then on June 15, 2005. Each renewal extended Plaintiff's contract for an additional year. On June 15, 2006, Defendant informed Plaintiff that it would not renew his employment contract. Accordingly, Plaintiff's

employment terminated on June 30, 2006.

Plaintiff was informed that Defendant would not renew his employment contract because of restructuring in the Accounts Payable Unit. The decision to restructure the Unit was made in the fall of 2005, in order to address delays in processing payments. The changes that were implemented included eliminating the existing five (5) Account Clerk positions in favor of three (3) Exception Processor positions.

Plaintiff claims that Defendant used institutional restructuring as a pretext to terminate his employment for making complaints regarding an excessive workload. Beginning in December of 2005, Plaintiff had been charged with the tasks of a former employee in addition to his own workload. In February of 2006, Defendant complained about the excessive workload to his supervisor. According to Plaintiff, the complaint was the impetus behind Defendant's decision not to renew his contract.

Plaintiff, a black Sierra Leonean, also claims that Defendant engaged in discriminatory hiring practices based on his race, color and/or national origin. During the pendency of his employment, Plaintiff applied for fourteen (14) vacancies in the Finance Office. In addition, Plaintiff alleges that he applied for the newly created Exception Processor position.[1] Plaintiff argues that he was not selected for any of these vacancies despite being the most qualified candidate for each position.

B. The Administrative Exhaustion Requirement

A plaintiff must file a charge of discrimination with the Equal Employment Opportunity

[1] Both Plaintiff and Defendant refer to this position as the Exception Processor position. However, the materials before the Court indicate that the official title of this position is Accounts Payable Exception. See e.g., Plaintiff's Supp., Exhibits 4 & 5, p.2. For the purposes of uniformity, the Court will also refer to this position as the Exception Processor position.

Commission ("EEOC") before filing a federal lawsuit under Title VII of the Civil Rights Act. See 42 U.S.C. §2000e-5(f)(1). The charge must be filed with the EEOC within one hundred and eighty (180) days of the alleged unlawful employment practice unless state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency. See 42 U.S.C. §2000e-5(e)(1). When this occurs, the limitations period is extended and the employee has three hundred (300) days from the alleged unlawful employment practice to file a charge with the EEOC. *Id.* The three hundred (300) day limitation period applies in this case because Plaintiff initially filed a charge with the Maryland Commission on Human Relations.

Plaintiff initiated a Charge of Discrimination against Defendant alleging violations of Title VII of the Civil Rights Act (the "Charge") in December of 2006.[2] The Charge was not signed until June 25, 2007. Defendant requested that the EEOC conduct a timeliness review to determine the appropriate filing date. In a telephone conference held on September 12, 2007, EEOC Investigator Regina Davis deemed the December 2006 date as the appropriate filing date.[3] Defendant's Response to the Charge was filed with the EEOC on September 25, 2007 (the "Response").

Under Title VII, a charge of discrimination filed with the EEOC must identify the parties and describe generally the offending action or practice. *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). The scope of an employee's subsequent lawsuit is limited to those discrimination claims stated in the initial charge, those reasonably related to the original complaint and those developed by reasonable investigation of the original complaint. *Id.*

---

[2] Plaintiff testifies that he does not remember the exact date for the submission, only that it occurred between December 25, 2006 and December 31, 2006. Deposition of Mohamed L. Fornah, March 5, 2009, p. 19, lines 1-3.

[3] For purposes of Defendant's Motion, Defendant does not dispute that the December 2006 date is the appropriate filing date.

Plaintiff's Charge makes no specific mention of his claim of race, color and/or national origin discrimination with regard to the Exception Processor position. However, Plaintiff complains of discriminatory termination and hiring practices and alleges that the discriminatory practices occurred during the same time frame as described in the Charge. As such, the EEOC's investigation of Plaintiff's Charge could reasonably be expected to include Plaintiff's claim involving the Exception Processor position. See *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002) (Plaintiff barred from making a claim of retaliation because administrative investigation of his charge of race based discrimination could not reasonably be expected to touch on the aforementioned retaliation claim).

## II. Discussion

### A. Standard of Review

Summary judgment is proper if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248-49. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). The Court may only rely on facts supported in the record, not simply

assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Grave-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex*, 477 U.S. at 323-24). When ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Although motive is a critical factual issue in employment discrimination cases, summary judgment is appropriate if, as a matter of law, the plaintiff cannot prevail on their claim. *Evans v. Techs. Applications & Svcs. Co.*, 80 F.3d 954, 958-9 (4th Cir. 1996).

B. <u>Burden of Proof</u>

1. *Retaliation*

Title VII prohibits an employer from retaliating against an employee who opposes unlawful employment practices in the workplace or, who participates in ongoing investigations or proceedings under Title VII. See 42 U.S.C. §2000e-3(a); *Crawford v. Metro. Gov't of Nashville and Davidson County*, 129 S. Ct. 846, 850-52 (2009) (the Court held that answering questions during an ongoing investigation about workplace discrimination, specifically sexual harassment, is protected under the opposition clause of Title VII's anti-retaliation clause). An employee must satisfy the *McDonnell Douglas* three step proof scheme in order to prevail on a retaliation claim. *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)).

> First, the employee must establish, by a preponderance of the evidence, a *prima facie* case of retaliation. Once established, the burden shifts to the employer to rebut the presumption of retaliation by articulating a non-retaliatory reason for its action. If the employer meets its burden of production, the presumption of discrimination created by the prima facie case is rebutted and drops from the case, and the employee bears the ultimate burden of proving that he or she has been the

victim of retaliation.

*Id.* In order to establish a *prima facie* case of retaliation, the employee must prove: (1) that they engaged in a protected activity; (2) that they suffered an adverse employment action; (3) and that a causal connection exists between the two. *Id.*

2. *Discrimination in Hiring*

Title VII makes it unlawful for an employer to, "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." See 42 U.S.C. §2000e-2(a)(1). To prevail in a discrimination action, the plaintiff must show the existence of discriminatory purpose in the employers hiring practices through direct evidence, – or where no direct evidence is available, through the *McDonnell Douglas* three step proof scheme outlined above. *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 606-7 (1999). In order to establish a *prima facie* case of discrimination in a refusal to hire case, the plaintiff must show that (1) he is a member of a protected class; (2) he applied and was qualified for a job which the employer was seeking applicants; (3) despite his qualifications, he was rejected, and; (4) after his rejection, the position remained open and the employer continued to seek applicants from persons of his qualifications. *EEOC v. Sears Roebuck and Co.*, 243 F.3d 846, 851 (4th Cir. 2001).

C. Analysis

1. *Plaintiff's Retaliation Claim*

Plaintiff alleges that Defendant did not renew his employment contract as retaliation for complaining about the additional responsibilities he was given after another employee was fired.

Plaintiff's Charge, p. 3. Complaining to an employer regarding excessive workload is not a legally protected activity under Title VII. See 42 U.S.C. § 2000e-3(a). As such, Defendant is entitled to summary judgment with regard to this claim.

2. *Plaintiff's Claims of Race, Color and National Origin Discrimination with regard to Positions 1-11.*[4]

Filing a timely charge with the EEOC is a prerequisite to filing a federal lawsuit alleging discrimination under Title VII. *See* 42 U.S.C. §2000e-5(f)(1). For Positions 1-11, the Court is unable to determine the date Plaintiff learned of Defendant's allegedly discriminatory hiring practices. This date is material to determining whether Plaintiff's Charges was filed with the EEOC within the three hundred (300) day limitations period.

Defendant contends that for each position, Plaintiff was placed on notice of any allegedly discriminatory hiring practices as of the hired candidate's start date. Consequently, Defendant argues that Plaintiff would have been on notice for positions 1-11 between December 13, 2004 and February 20, 2006. Defendant's Motion, p. 10. Using these dates, Defendant argues that Plaintiff's Charge was untimely with regard to Positions 1-11. Plaintiff argues that he learned of Defendant's allegedly discriminatory and retaliatory employment practices on June 1, 2006 and therefore filed a timely Charge. Plaintiff, however, does not provide any evidence that he indeed learned of the alleged discriminatory practices on June 1, 2006.[5] Reviewing the record in the light most favorable to Plaintiff, the Court finds that a genuine dispute does not exist with regard

[4] Plaintiff fails to state his claims in numbered paragraphs as required by Federal Rule of Civil Procedure 10(b). Therefore, the Court shall adopt the numbering scheme provided in Defendant's Exhibit 3.

[5] Plaintiff does provide to the Court his factual account under a notarized seal, and this factual account includes the claim that he learned of the alleged discriminatory practices on June 1, 2006. Plaintiff's notarized statement does not comply with the requirements for affidavits, namely that Plaintiff's statements must be based upon "personal knowledge" and include facts that would be admissible in evidence. *See* FED. R. CIV. P. 56(e). Even accepting Plaintiff's statement, the Court nonetheless finds it insufficient to overcome the summary judgment standard.

to this material fact. Regardless of whether Plaintiff gained actual notice on June 1, 2006, Plaintiff's subjective, actual knowledge does not outweigh the objective, constructive notice of Positions 1-11 being filled for months before June 1, 2006. The Court grants Defendant summary judgment on Plaintiff's claims of race, color and/or national origin discrimination in Defendant's hiring practices for Positions 1-11.

3. *Plaintiff's Claims of Race, Color and National Origin Discrimination with regard to Position 12.*

Plaintiff asserts that he was the most qualified candidate for Position 12 and that Defendant engaged in discriminatory hiring practices, based on his race, color and/or national origin, when it selected another candidate for the employment vacancy.[6] Defendant argues that Plaintiff is unable to establish a *prima facie* case of discrimination with regard to his claims of race and color based discrimination because the successful candidate for this position was African American and therefore, a member of Plaintiff's protected class in terms of race and color.[7] Defendant's Motion, p. 11-12; Defendant's Exhibit 5, Affidavit of Janet Foster; *Miles v. Dell, Inc.*, 429 F.3d 480, 488 (4th Cir. 2005) (stating, "replacement within the protected class gives rise to an inference of non-discrimination with respect to the protected status. The fourth prong requires plaintiffs, as part of their prima facie case, to eliminate this inference of non-discrimination.").

Selecting the most qualified candidate for a position is a legitimate non-discriminatory

---

[6] Defendant states that it has no documentation of Plaintiff's application for this position. Defendant's Exhibit 5, Affidavit of Janet Foster. As evidence of his application for this position, Plaintiff presents a copy of an Application For Employment for the PeopleSoft Analyst - Encumbrance and Budget position. Plaintiff's Supp., Exhibit 2d, Application for Employment. The application itself does not provide the Court with evidence that the application was actually received by Defendant, therefore this presents a factual dispute to which Plaintiff is entitled all reasonable inferences. *Nicholas v. Comcast Cablevision of Md.*, 84 F. Supp. 2d 642, 649 (D. Md. 2000) (dispute regarding whether plaintiff properly applied for the position at issue is resolved in plaintiff's favor on a motion for summary judgment).

[7] Defendant concedes that the successful candidate was not of the same national origin as Plaintiff.

reason for Defendant's hiring decision. See *Venugopal v. Shire Laboratories,* 334 F. Supp. 2d 835 (D. Md. 2004) (defendant's hiring decision is based on a legitimate non-discriminatory reason when it selects the most qualified candidate for the position). The vacancy announcement stated, "[a] minimum of two (2) years PeopleSoft experience is preferred." Plaintiff's Exhibit 3, Vacancy Announcement No. 001449. The successful candidate had over six (6) years of PeopleSoft experience, including five (5) years with PeopleSoft, Inc.; Plaintiff had only one (1) year of PeopleSoft experience. Defendant's Exhibit 5, Affidavit of Janet Foster. In the absence of evidence of discriminatory motive or pretext, Defendant is entitled to summary judgment on this claim because the candidate selected was more qualified that Plaintiff.

4. *Plaintiff's Claims of Race, Color and National Origin Discrimination with regard to Position 13.*

Plaintiff argues that he was also the most qualified candidate for this position and that Defendant discriminated against him, based on his race, color and/or national origin, when it decided to hire another candidate for the position.[8] As with Vacancy No. 001449, the successful candidate for this position was African American and a member of Plaintiff's protected class in terms of race. Defendant's Exhibit 10, Affidavit of Robin Whitfield. Defendant's decision to hire an individual within Plaintiff's protected class gives rise to an inference of non-discrimination with regard to his race claim. *Miles*, 429 F.3d at 488.

Nevertheless, Plaintiff cannot make a *prima facie* case for discrimination because he did not meet the minimum qualifications for this accounting position. *Nicholas*, 84 F. Supp. 2d at

[8] The parties disagree as to whether Plaintiff filed a complete application for Vacancy No. 1001689. Defendant represents that Plaintiff failed to appear for an interview scheduled for July 28, 2006. Defendant's Exhibit 10, Affidavit of Robin Whitfield. Defendant further represents that the interviewer subsequently left messages for Plaintiff in order to reschedule, but that Plaintiff never returned the calls. *Id.* Plaintiff disputes these contentions. At a minimum, this is a factual dispute to which Plaintiff is entitled to all reasonable inferences. *Nicholas*, 84 F. Supp. 2d at 649.

649 (to establish a *prima facie* case for discrimination, plaintiff must meet the minimum requirements enumerated in the vacancy announcement for the position in dispute). The vacancy announcement required, "[a] minimum of (2) years [experience] working within a Student Financial Services, Bursar or Accounting environment. (4) or more years in a Student Financial Services or Bursar office within a higher education organization is preferred." Plaintiff's Exhibit 4, Vacancy Announcement No. 1001689. Plaintiff had less than two (2) years of accounting experience at the time of his application, while the successful candidate had five (5) years of accounting experience. Defendant's Exhibit 10, Affidavit of Robin Whitfield. As such, Defendant is entitled to summary judgment on this claim.

5. *Plaintiff's Claims of Race, Color and National Origin Discrimination with regard to Position 14.*

Plaintiff cannot make a *prima facie* case for discrimination because Defendant cancelled the search for Vacancy No. 1189. Defendant's Exhibit 9, Affidavit of Jacquelyn Anderson. As the vacancy did not remain open, Defendant is entitled to summary judgment on this claim. See *Kinnally v. Marriot Int'l., Inc.*, 2006 U.S. Dist. LEXIS 699, *12 (D. S.C., January 3, 2006), *aff'd*, 2006 U.S. App. LEXIS 25394 (4th Cir., Oct. 11, 2006) ("[F]or a position to be considered to be "open," the employer must continue to seek candidates for the position with comparable qualifications as plaintiff.").

6. *Plaintiff's Claims of Race, Color and National Origin Discrimination with regard to the Exception Processor Position.*

The parties disagree as to whether Plaintiff filed a complete application for the Exception Processor position. Defendant claims that its records do not reflect that Plaintiff applied for an

Exception Processor position.[9] Defendant's Reply, p. 5. Plaintiff disputes this contention, and provides an email communication indicating that Defendant's hiring system had received his application. Plaintiff's Supp., Exhibit 4, Email from hrjobs@umuc.edu. Although Plaintiff presents some evidence that Plaintiff applied for at least one Exception Processor position, neither Plaintiff nor Defendant provides evidence regarding the qualifications and characteristics of the individuals hired to fill these vacancies, other than that one individual was hired from within and the other was an outside hire. Plaintiff's Supp., Exhibit 4, Email from Darlene Saunders. Additionally, neither Plaintiff nor Defendant provides evidence of Plaintiff's qualifications for an Exception Processor position in comparison to the job requirements. Reviewing the record in the light most favorable to Plaintiff, the Court is unable to determine whether Defendant is entitled to judgment as a matter of law. As such, the Court denies Defendant's Motion for Summary Judgment on this claim.

[9] While Defendant contests Plaintiff's position that he applied for the Exception Processor vacancy, Defendant recognizes Plaintiff's Exhibit 6, which "seems to show that he applied for at least one of [the Exception Processor vacancies]." Defendant's Reply, p. 6. Nevertheless, Defendant maintains that its records do not reflect Plaintiff's application. Id. at 5-6.

## III. Conclusion

For the aforementioned reasons, it is hereby

**ORDERED** that the Court GRANTS Defendant's Motion with regard to Plaintiff's retaliation claim and Plaintiff's claims of race, color and national origin discrimination for Positions 1-14; and it is further,

**ORDERED** that the Court DENIES Defendant's Motion with regard to Plaintiff's claims of race, color and national origin discrimination for the Exception Processor Position.

/s/
Charles B. Day
United States Magistrate Judge

CBD/EC